# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BONG LEE, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 17-2218 |
| CITY OF CHESTER, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

Tucker, J.                                                                                  October 29, 2019

      Before the Court is Defendant Officer Todd Rose's ("Defendant" or "Defendant Rose") Motion for Summary Judgement (Doc. 16), Plaintiff Bong Lee's ("Plaintiff") response thereto (Doc. 19), and Defendant's Reply (Doc. 20). Upon consideration of the Parties' submissions and exhibits and for the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

    **I.     PROCEDURAL HISTORY**

      On May 15, 2017, Plaintiff commenced this action in the Eastern District of Pennsylvania against Defendants City of Chester, Officer Todd Rose, and Unknown City of Chester Police Officers. *See* Compl., Doc. 1. Plaintiff pled state law and constitutional claims under 42 U.S.C. § 1983. Plaintiff's claims against Defendant Rose include: false arrest and false imprisonment, malicious prosecution, excessive force, defamation, and false light invasion of privacy. Plaintiff's claims against the Unknown Officers include: malicious prosecution and intentional infliction of emotional distress. Plaintiff's claims against the City of Chester include: failure to properly train and supervise the Defendant officers.

On June 13, 2018, Defendants filed a Motion to Dismiss or in the alternative for a More Definite Statement. Doc. 5. On May 10, 2018, the Court granted in part and denied in part Defendants' Motion to Dismiss. Mot. to Dismiss Order, Doc. 11. Specifically, the Court denied Defendants' motion as to Plaintiff's claims of false arrest, false imprisonment, malicious prosecution, and excessive force. The Court granted Defendants' motion as to Plaintiff's failure to train claim, removing the City of Chester as a defendant. In addition, the Court granted Defendants' motion as to Plaintiff's claims of defamation and false light invasion of privacy, removing Defendant as to these claims. Mot. to Dismiss Order, Doc. 11. The Court denied Defendants' Motion for a More Definite Statement. Mot. to Dismiss Order, Doc. 11.

On June 7, 2018, Defendant Rose filed an Answer to Plaintiff's Complaint with Affirmative Defenses. Def. Answer, Doc. 12. Discovery was completed on November 5, 2018. *See* Scheduling Order, Doc. 15. This matter is now ripe for disposition. For the reasons set forth below, summary judgment is granted.

## II. STATEMENT OF FACTS[1]

On September 21, 2016, Plaintiff was working as the manager of Angel Cleaner II ("Angel Cleaner") in Chester, Pennsylvania. Pl. Dep. 12:2–15; 13:10–11; Def.'s Br. Supp. Mot. Summ. J. 1, Doc. 16. That same afternoon, Defendant entered Angel Cleaner to retrieve a garment he had left for cleaning. Pl. Dep. 51:3–6; 54:4–6; Def.'s Br. Supp. Mot. Summ. J. 1. Plaintiff explained to Defendant that the spot on his shirt could not be removed without damaging the garment. Pl. Dep. 55:13–19; Def. Dep. 18:19–24; 19:6. Defendant then refused to

---

[1] The Parties did not file a statement of undisputed material facts. Accordingly, this fact section largely reflects Plaintiff's account of the sequence of facts.

pay for the shirt and walked out of the store while cursing at Plaintiff. Pl. Dep. 54:9–12; Def.'s Br. Supp. Mot. Summ. J. 1.

Juanita Simpkins ("Ms. Simpkins") and Kathleen Clarke ("Ms. Clarke") entered the store approximately five to ten minutes after Defendant left. Pl. Dep. 61:21–24; Def.'s Br. Supp. Mot. Summ. J. 1. Ms. Simpkins alerted Plaintiff that Angel Cleaner damaged the buttons on a pair of pants that she previously had cleaned. Pl. Dep. 62:10–24; Def.'s Br. Supp. Mot. Summ. J. 1. Plaintiff agreed to re-attach the buttons at no charge, but declined to reimburse Ms. Simpkins for the pants. Pl. Dep. 63:4–12; Def.'s Br. Supp. Mot. Summ. J. 1. Plaintiff asserts that Ms. Simpkins stated that she was going to call the police, at which time Ms. Clarke went outside to phone the police. Pl. Dep. 63:15–17; Def.'s Br. Supp. Mot. Summ. J. 1.[2] In the interim, Plaintiff opines that she was in the process of locating the clothing listed on the receipt that Ms. Simpkins presented to her for pickup. Pl. Dep. 64:12–16; Def.'s Br. Supp. Mot. Summ. J. 1.

The Delaware County 911 dispatcher radioed the police supervisor in response to Ms. Simpkin's report of the dispute at Angel Cleaner. Def.'s Br. Supp. Mot. Summ. J. 2. The police supervisor advised the dispatcher that the "first available" officer would respond. Def.'s Br. Supp. Mot. Summ. J. 2. Defendant responded to the radio call and was advised by the dispatcher that "the caller is a customer and the clerk [was] refusing to give the clothes to the complainant and also [that] they appear[ed] to be damaged." Def.'s Br. Supp. Mot. Summ. J. 2. Thereafter, the Parties largely dispute the version of events. Plaintiff asserts that Defendant walked in while she was looking for Ms. Simpkin's clothing. Pl. Dep. 66:16–18; Def.'s Br. Supp. Mot. Summ. J. 3. Plaintiff further contends that she tried to talk to Defendant when he walked in, at which point

---

[2] During Ms. Simpkin's deposition, she stated that she was the one who called the police. Pl's Br. Opp'n Supp. Mot. Summ., Ex. B, 20:16–23.

he told her to shut up. Pl. Dep. 68:22–24; Pl's Br. Opp'n Supp. Mot. Summ. J. 2, Doc 19-2. Thereafter, Plaintiff placed Ms. Simpkin's clothing on the hanger and told her the price she owed for the cleaning, to which Defendant responded, "no pay" and proceeded to arrest her. Pl. Dep. 69:12–14; Def.'s Br. Supp. Mot. Summ. J. 3–4. Next, Plaintiff describes Defendant grabbing her left arm first and then the right arm, putting them behind her back, and placing them in handcuffs. Pl. Dep. 72:18–20; Def.'s Br. Supp. Mot. Summ. J. 4. Afterwards, Defendant dragged her to the police car and pushed her into the car with her hands handcuffed behind her back. Pl. Dep. 74:1–2; 75:10–11.

Once at the police station, Defendant took Plaintiff into a building and handcuffed her to a wooden chair with her hands behind her back. Pl. Dep. 79:17–24. Defendant left and Plaintiff began to complain that the handcuffs were hurting her. Pl. Dep. 80:14–15; Def.'s Br. Supp. Mot. Summ. J. 5. Thirty minutes later an unnamed police officer repositioned the handcuffs from behind her back and fastened them to the chair. Pl. Dep. 80:14–18.

Plaintiff was released from custody that day and charged with theft by unlawful taking and theft by deception. Pl's Br. Opp' Supp. Mot. Summ. J., Ex. G; Def.'s Br. Supp. Mot. Summ. J. 7. On January 23, 2017 Plaintiff attended a preliminary hearing before Magisterial Disrict Judge Wilden Davis. Def.'s Br. Supp. Mot. Summ. J. 7. At this hearing, Judge Wilkins entered an order that notified Plaintiff that "[she was] convicted of or pled guilty to violating the above charge(s)[3] and [he] sentenced [her] to the following: [f]ines, [c]osts, and [r]estitution", which totaled $161.00. Def.'s Br. Supp. Mot. Summ. J. 8. The order further outlined that Plaintiff could "change [her] guilty plea to a not guilty plea by notifying the Magisterial District Judge in

---

[3] The order does not enumerate any specific "above charges." Def.'s Br. Supp. Mot. Summ. J., Ex. N.

4

writing within 30 days after [her] sentence [was] imposed" and that if she "changed [her] plea, the Magisterial District Judge [would] vacate this sentence" and forward her case to "the Court of Common pleas for further proceedings." Def.'s Br. Supp. Mot. Summ. J., Ex. N. Plaintiff received the order and paid the fines, costs, and restitution, at which time the charges against her were dismissed. Pl. Dep. 93:7–18; Def.'s Br. Supp. Mot. Summ. J. 8.

### III. STANDARD OF REVIEW

Summary judgment is awarded only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). "Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains its initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial.*" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

5

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983

Plaintiff is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional or statutory rights. 42 U.S.C. § 1983. Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Therefore, to establish a claim under Section 1983, a plaintiff must demonstrate that defendant, acting under color of state law, deprived plaintiff of a right secured by the Constitution or the laws of the United States. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."); *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)(quoting *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)).

### B. Plaintiff's Section 1983 Claims

#### i. False Arrest and False Imprisonment

To establish a §1983 false arrest or false imprisonment claim, a plaintiff must allege that her arrest deprived her of a constitutional right. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). The Fourth Amendment to the United States Constitution protects persons from being subjected to unreasonable searches and seizures by the government. U.S. CONST. Amend. IV; *See, e.g., Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) ("[T]he constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis."). Because an arrest is a "seizure," for Fourth Amendment purposes, a plaintiff may survive summary judgment on a § 1983 claim for false arrest or false imprisonment if that plaintiff can show that the arrest at issue lacked probable cause. *See Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003); *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997) ("The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause."); *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978) ("Clearly, an arrest without probable cause is a constitutional violation actionable under § 1983."); *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."). Probable cause to arrest exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).

Here, Plaintiff alleges that her rights under the Fourth Amendment to be free from false arrest and false imprisonment were violated because Defendant arrested her without probable cause. Compl. 13. Defendant argues that Plaintiff's false arrest and false imprisonment claim are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and in the alternative, Plaintiff's arrest was supported by probable cause.

### a. Plaintiff's False Arrest and False Imprisonment Claim Are Barred by *Heck v. Humphrey*.

"Under *Heck* [*v. Humphrey*], a §1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Giles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005); *see Heck*, 512 U.S. at 486–87 ("[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."). *Heck* is applicable if "success in [the] action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2006).

While "*Heck* does not automatically bar [a plaintiff's] claims of false arrest and false imprisonment . . . there are circumstances in which *Heck* may bar such claims." *Olick v. Pa*, 739 Fed. Appx. 722, 726 (3d Cir. 2018) (citation omitted). These circumstances include instances where a plaintiff's false arrest or false imprisonment claim "would imply the invalidity of the conviction or sentence." *Id.* at 725. Therefore, to prevail on her false arrest and false imprisonment claim, Plaintiff "must demonstrate that success on h[er] § 1983 claims would not

8

conflict with the prior judicial resolution of h[er] criminal proceedings." *See Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 345 (3d Cir. 2015). Stated otherwise, "a plaintiff generally cannot maintain a § 1983 action unless the termination of the prior criminal proceeding [was resolved] in favor of the accused." *Fernandez v. City of Elizabeth*, 468 Fed. Appx. 150, 154, (3d Cir. 2012); *see Deemer v. Beard*, 557 Fed. Appx. 162, 166 (3d Cir. 2014) ("We . . . have interpreted *Heck* to impose a universal favorable termination requirement on all § 1983 plaintiffs attacking the validity of their conviction or sentence.") (citations omitted); *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) ("[A] section 1983 action for damages must be dismissed unless there was no conviction or sentence or the plaintiff can demonstrate that [a] conviction or sentence has already been invalidated.") (citation omitted).

Plaintiff argues that *Heck* is inapplicable because "there is a genuine issue of material fact as to whether the proceedings ended in [P]laintiff's favor." Pl.'s Mem. Opp'n Mot. Summ. J. 25. Plaintiff contends that "[t]here is a lack of any authenticated evidence or testimony that [P]laintiff ple[]d guilty or entered into a diversionary program, which would implicate *Heck*." *Id*. Plaintiff, however, is incorrect.

Plaintiff's claims are barred by *Heck* because the underlying criminal proceeding did not terminate in a manner reflecting Plaintiff's innocence of the charged offense. Plaintiff was charged with theft by unlawful taking under 18 Pa. Cons. Stat. Ann. § 3921, and theft by deception under 18 Pa. Cons. Stat. Ann. § 3922—the lead offense. Def.'s Br. Supp. Mot. Summ. J. Ex. L. On January 23, 2017, Plaintiff attended a preliminary hearing before Magisterial District Judge Wilden Davis in which Plaintiff entered into a conditional dismissal: the charges against Plaintiff would be dismissed if Plaintiff paid court costs and fine. Def.'s Br. Supp. Mot. Summ. J. Ex. N. The order entered by Judge Davis on January 23, 2017 stated that Plaintiff was

9

"convicted of or pled guilty to violating the above charge(s)" was sentenced to "[f]ines, [c]osts, and [r]estitution" totaling $161.00. *Id*. Although the order did not specify the "above charges," the receipt provided to Plaintiff indicated that the lead offense was theft by deception under 18 Pa. Cons. Stat. Ann. § 3922. *Id*. Judge Davis advised that Plaintiff "may change [her] guilty plea to a not guilty plea by notifying [Judge Davis] in writing within 30 days after [her] sentence [was] imposed" and that if Plaintiff changed her plea, Judge Davis "shall vacate this sentence and [her] case [would] be forwarded to the Cort of Common Pleas for further proceedings." *Id*.

Judge Davis further explained the particulars of Plaintiff's dismissal in a letter dated May 31, 2017:

> On January 23, 2017 in open court, an agreement was proposed by Octavio Arechavala Esquire, and accepted by the Assistant District Attorney A. Amoroso prior to being approved by Magisterial District Judge Wilden H. Davis. This case was docketed as CR-339-16 and was to be withdrawn after court costs and fines were paid. Administration Office of Pennsylvania Courts instructed the District Court that it was not moved to a non traffic violation and would need to be dismissed after court costs and fine were paid. There is an order of imposing sentence stating that on January 23, 2017, Bong Lee was convicted of or pled guilty to the charges. All court costs and fine were paid on March 6, 2017.

Def.'s Br. Supp. Mot. Summ. J. Ex. M. Plaintiff testified that the charges against her would be dropped and that "it was [$]16[1][.00]." Pl.'s Dep. 93:4–14; 95:17–24; 96:5–9. Although Plaintiff testified that she was unaware that she was "convicted of or pled guilty" to the specified charges, she acknowledged that her dismissal was conditioned upon paying $16[1].00 in court fees. Pl.'s Depo 93:4–14; 95:17–24; 96:5–9. Plaintiff's lawyer confirmed that the agreement, as explained to Plaintiff, was consistent with the particulars as stated in Judge Davis' letter. Def.'s Br. Supp. Mot. Summ. J., Ex. O, 10:16–19.

The Third Circuit in *Gilles* considered whether plaintiff's entry into Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") program, and subsequent expungement of his record upon completion of the program, implicated *Heck*. *Gilles v. Davis*, 427 F.3d at 209. The court noted that by entering the program a criminal defendant "avoids trial and protentional jail time, and receives expungement of the record in exchange for successfully completing a probationary period." *Id*. The court reasoned that "acceptance into the ARD program is not intended to constitute a conviction," as well as that "b[y] entering into the ARD program, the defendant waives his right to prove his innocence, but at the same time, does not admit guilt." *Id*.

The purpose of the *Heck* bar "is to avoid parallel litigation of probable cause and guilt" and to "prevent[] the claimant from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against creating two conflicting resolutions arising from the same transaction." *Id*. In finding that plaintiff's participation in the ARD program invoked *Heck* and was in fact not a favorable termination, it reasoned that "[t]he ARD program is a court-supervised compromise" that "imposes several burdens upon the criminal defendant not consistent with innocence, including a probationary term, restitution . . . imposition of costs, and imposition of a reasonable charge relating to the expense of administering the program . . . ." *Id*. at 211.

Similarly, in *Fernandez v. City of Elizabeth* the Third Circuit concluded that a plaintiff's entry into the New Jersey Pre-Trial Intervention ("PTI") program, a program very similar to Pennsylvania's ARD program, implicated the *Heck* bar. 468 Fed. Appx. at 151,154. All of the plaintiff's charges were dismissed after a probationary period. *Id*. Applying its analysis in *Gilles*, the court rejected plaintiff's arguments that *Heck* applies only to convictions and found that

11

plaintiff's "participation in the PTI program, and the subsequent dismissal of the charges against him was not a favorable termination." *Id*.

Here, as in *Gilles* and *Fernandez*, it cannot be said that Plaintiff's resolution of the charges against her constitutes a favorable termination. Plaintiff argues that "[t]here is a lack of any authenticated evidence or testimony that [P]laintiff ple[]d guilty or entered into a diversionary program, which would implicate *Heck*." Pl.'s Mem. Opp'n Mot. Summ. J. 25. However, although Plaintiff did not enter an ARD program, as did the plaintiffs in *Gilles* and *Fernandez*, the Court agrees with Defendant's analysis that "[P]laintiff reached a resolution of charges against her in which she gave up her right to prove her innocence, but yet was still not required to admit guilt to any charges." Def.'s Br. Supp. Mot. Summ. J. 19. The dismissal of Plaintiff's charges was the result of a compromise. The dismissal of the charges was conditioned upon Plaintiff's acceptance of court costs, a burden which cannot be said to be consistent with innocence. Consequently, the fact that Plaintiff did not "plead guilty" or "enter into a diversionary program" cannot avert application of the *Heck* bar because by accepting the conditional dismissal of the charges against her, Plaintiff relinquished the opportunity to prove her innocence.

## ii. Malicious Prosecution

To prove a §1983 malicious prosecution claim, a plaintiff must show that: "(1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). "If the

prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under § 1983." *Taylor v. Winters*, 2004 U.S. App. LEXIS 21337, *9.

### a. Plaintiff's Malicious Prosecution Claims Must Be Dismissed Because the Criminal Proceeding Did Not Terminate in Plaintiff's Favor.

Plaintiff is unable to establish that the criminal proceeding terminated in her favor. As discussed above, the dismissal of Plaintiff's charges was the result of a compromise, which did not reflect her innocence. Thus, it cannot be said that the criminal proceeding ended in Plaintiff's favor. Accordingly, the Court must grant summary judgement as to her malicious prosecution claim against Defendant and grant summary judgment sua sponte as to her malicious prosecution claim against the Unknown Police Officer.

Summary judgment may be granted sua sponte to a party who has not moved for it. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326. A sua sponte grant of summary judgment may be appropriate "[w]here it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgement are before the court" and "those materials show that no material dispute of fact exists and that the other party is entitled to judgement as a matter of law." *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004). The non-moving party must be on notice that the court is considering granting summary judgment sua sponte. *Id*. at 222; *See* also *Celotex Corp.*, 466 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.") Notice is satisfied if "the target party had reason to believe that the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson* at 219 (citations omitted).

The Court finds that Plaintiff had various reasons to believe that it might consider her malicious prosecution claim against the Unknown Police Officer. First, Defendant questioned the legal sufficiency of Plaintiff's malicious prosecution claim against Defendant in its Motion to Dismiss. *See* Mot. to Dismiss, Doc. 5. Second, Plaintiff was aware that Defendant moved for summary judgment on her malicious prosecution claim against Defendant. *See* Def.'s Br. Supp. Mot. Summ. J. In fact, Plaintiff opposed summary judgment on the malicious prosecution claim against Defendant and in doing so was incentivized to present all evidence that a genuine dispute exists as to whether the proceedings terminated in her favor. *See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. By virtue of the analogous burdens of proof on both of her malicious prosecution claims, Plaintiff was on notice to present all of her evidence in support of her malicious prosecution claim against Defendant. Consequently, it cannot be said that she was not on notice to present all of her evidence in support of her malicious prosecution claim against the Unknown Police Officer.

### iii. Excessive Force

Plaintiff seeks damages under Section 1983 for violations of her Fourth Amendment rights. Plaintiff claims that Defendant applied handcuffs to her wrists so tightly that it amounted to excessive force.

To obtain relief in a Section 1983 action, a plaintiff must show that a defendant, acting under color of state law, deprived him of a right secured by the Constitution and laws of the United States. *See, e.g., Harvey v. Plaints Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Defendant does not contest that he was acting under color of state law when he interacted with Plaintiff, thus the Court's discussion will focus on whether Defendant deprived Plaintiff of a constitutional right. Def. Dep. 8:18–22.

14

Qualified immunity shields government officials from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court resolving a qualified immunity question must determine whether the facts alleged clearly establish a constitutional right and demonstrate that a constitutional right was violated. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may employ its discretion when determining which of the two prongs it will address first. *Pearson*, 555 U.S. at 236. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Katz*, 533 U.S. at 202. The reasonableness of an officer's action is determined by "whether a reasonable public official would know that his specific conduct violated clearly established rights." *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996). However, "[i]f an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful." *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148.

The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested. *Graham v. Connor*, 490 U.S. 386, 388 (1989), *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Graham*, 490 U.S. at 394). The use of excessive force is itself an unlawful seizure under the Fourth Amendment. *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006). To state a claim for excessive force, a plaintiff must demonstrate that he was seized and that the force used to effectuate his seizure was unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). To determine reasonableness, a court must consider whether the police officer's conduct was "objectively reasonable in light of the totality of the facts and circumstances." *Lynn v. Schertzberg*, 169 F.

App'x 666, 669–70 (3d Cir. 2006) (internal quotations omitted). Courts may consider whether a suspect posed an immediate threat to the safety of the officer, whether the suspect was actively resisting arrest, or whether the suspect appeared to be violent, among other factors. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989). The fact that a suspect was arrested without probable cause alone is not enough to constitute excessive force. *Snell v. City of York*, 564 F.3d 659, 672–73 (3d Cir. 2009). The Third Circuit has held that excessively tight handcuffs may constitute excessive force in violation of the Fourth Amendment. *Kopec*, 361 F.3d at 777.

In *Kopec*, the Third Circuit reversed a grant of summary judgment after finding that the defendant officer was not entitled to qualified immunity on an excessive force claim. In *Kopec*, plaintiff was arrested—and handcuffed behind his back—for disorderly conduct after refusing to identify himself. *Id.* at 774. Within approximately ten (10) seconds of being handcuffed, plaintiff began losing feeling in his right hand and asked defendant to loosen the handcuffs to no avail. *Id.* Plaintiff informed defendant that "the pain was unbearable and begged him to loosen the handcuffs." *Id.* Again, defendant ignored plaintiff's request. *Id.* Plaintiff eventually "began to faint from the pain . . . and fell to the ground." *Id.* Plaintiff requested that defendant "remove the handcuffs because he had lost feeling in his right hand," but defendant continued to disregard plaintiff. *Id.* While "groaning due to excruciating pain," plaintiff again asked defendant to loosen or remove the handcuffs; defendant "took no steps to assist him." *Id.*

Despite these repeated requests, defendant ignored plaintiff's complaints for ten minutes before finally loosening the handcuffs. *Id.* Plaintiff filed an action against defendant under section 1983 alleging excessive force. Plaintiff "claim[ed] to have permanent nerve damage in his right wrist as a result of the handcuffing, for which a hand surgeon treated him for over one year." *Id.*

On appeal, the Third Circuit held that these facts established use of excessive force in violation of the Fourth Amendment. *Id*. at 773. In denying defendant qualified immunity, the court emphasized that defendant "faced rather benign circumstances that hardly justified his failure to respond more promptly to [plaintiff's] entreaties, at least to the extent to ascertain if the handcuffs were too tight." *Id.* at 777. The Third Circuit noted that defendant "was not, after all, in the midst of a dangerous situation involving a serious crime or armed criminals." *Id.* Importantly, in recognizing the potential for "open[ing] the floodgates to a torrent of handcuff claims," the court emphasized that its opinion should not be overused. *Id.*

Around a year later, in *Gilles v. Davis*, the Third Circuit distinguished *Kopec*, concluding that in *Gilles* "obvious visible indicators of [plaintiff's] pain were absent." *Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005). In *Gilles*, plaintiff was arrested for disorderly conduct and remained in handcuffs for approximately three to four hours. *Id.* at 202. Plaintiff argued that he alerted defendant to his overly tight handcuffs by: (1) singing religious songs "to take his mind off the pain"; and (2) complaining to several unidentified officers. *Id.* at 207–08. In finding the facts at issue insufficient to establish excessive force, the Third Circuit emphasized that other than plaintiff's alleged complaint that the handcuffs were too tight, plaintiff demonstrated no expression or signs of discomfort at the time he was handcuffed, nor did plaintiff seek or receive medical treatment for the alleged injuries from the handcuffs. *Id.* In holding that there was no excessive force under Section 1983, the court found that defendant was entitled to qualified immunity as defendant's use of force was objectively reasonable under the circumstances." *Id.* at 207 (citing *Kopec*, 361 F.3d at 777).

After *Kopec* and *Gilles*, "courts addressing handcuff claims focus on the officer's awareness that the handcuffs are unreasonably tight, putting an emphasis on whether there are

17

obvious visible indicators of pain; on the permanence and extent of any injury; and on the circumstances surrounding the handcuffing." *Arditi v. Subers*, 216 F.Supp.3d 544, 553 (E.D. Pa. 2016) (internal citations and quotations omitted); *see also Graham-Smith v. Wilkes-Barre Police Department*, 739 Fed. Appx. 727, 732 (3d Cir. 2018) ("[E]xcessive force is not determined by injury alone. However, the unreasonableness of handcuffing requires some indication that it was done unnecessarily or excessively."). For example, in *Clifton v. Borough of Eddystone*, the court rejected plaintiff's excessive force handcuffing claim because she never told defendant—albeit she allegedly told other officers—that the handcuffs were too tight and did not allege "obvious visible indicators of pain." *Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617 (E.D. Pa. 2011).

### a. Plaintiff Has Not Presented Sufficient Evidence Such That A Reasonable Jury Could Find That Defendant's Application of Handcuffs Constituted Excessive Force.

Plaintiff avers that Defendant ". . . subjected [her] to excessive force based on the intentional misapplication of handcuffs, including overly forcefully and unnecessarily grabbing Plaintiff's arms to do so . . . ." Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 6. However, Plaintiff cites to no evidence outside of her own testimony and photographs depicting marks on her wrists to support her excessive force claim. As noted above, in order to state an excessive force claim, a plaintiff must demonstrate that the force used to effectuate a seizure was unreasonable. *Kopec*, 361 F.3d at 776. Such unreasonableness, in the context of handcuffing, requires indicia that the amount of force used was excessive or unwarranted. *Graham-Smith v. Wilkes-Barre Police Department*, 739 Fed. Appx. at 732.

Here, by Plaintiff's own admission, she made no outward signs that the handcuffs were too tight. Pl. Dep. 78:17–20. Similar to the plaintiff in *Clifton*, Plaintiff did not complain to

Defendant of any pain from the handcuffs or ask that the handcuffs be loosened. In fact, Plaintiff's contention that that there is a genuine issue of whether she complained because of evidence that she was screaming is rebutted by the testimonies of Defendant, Ms. Simpkins and Ms. Clarke, all of whom state that Plaintiff was screaming prior to Defendant applying handcuffs. Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 10–11; Def.'s Br. Supp. Mot. Summ. J., Ex. D, 26:1–7; Def.'s Br. Supp. Mot. Summ. J., Ex. E, 20:4–10; Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Ex. D, 59:17–20. Thus, Plaintiff's screaming is not persuasive evidence that the handcuffs cased her pain. Furthermore, even if the testimonies of Defendant, Ms. Simpkins, and Ms. Clarke illustrate Plaintiff's contention that Defendant was on notice that the handcuffs were too tight, Plaintiff herself testified that she was not screaming after she was handcuffed. Pl. Dep. 73:4–6.

Plaintiff relies on *Fry v. Smoker* to rebut the well-settled case law in the Third Circuit that there must be some indicia that the force used in handcuffing is excessive. Plaintiff contends that "the Third Circuit has not held that an arrestee must complain about overly tight handcuffs in order to make out a claim of excessive force, and that such would create an obstacle not required by *Kopec*." Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 9. However, Plaintiff's argument fails to address the fact that a court must consider whether the police officer's conduct was "objectively reasonable in light of the totality of the facts and circumstances." *Lynn v. Schertzberg*, 169 F. App'x 666, 669–70 (3d Cir. 2006) (internal quotations omitted). *Fry* is distinguishable from the present case. Unlike Plaintiff, who by her own admission has never sought medical treatment and has presented no evidence indicating that the handcuffs were placed improperly or caused injury, the plaintiff in *Fry* produced ample evidence of excessive force. *See* Pl. Dep. 96:10–11. The plaintiff "produced substantial evidence of serious injuries, including pain and numbness in his

19

right wrist and thumb, which began the day after Officer Smoker's application of handcuffs and required six months of medical treatment and surgery, as well as an expert report linking the injury to overly tight handcuffs that compressed Fry's nerve." *Fry v. Smoker*, 2012 U.S. Dist. LEXIS 64939, *18-19. Consequently, although the plaintiff in *Fry* did not complain, the Court agrees with Defendant that "he met all of the other factors set out by the Third Circuit in addressing an excessive force claim." Def's. Rep. Br. Supp. Mot. Summ. J. 1, Doc 20. Here, Plaintiff fails to provide evidence that she meets such factors.

Additionally, the present record supports a finding that Defendant is entitled to qualified immunity. Plaintiff has not presented enough evidence that Defendant's application of the handcuffs constituted excessive force that violated her Fourth Amendment rights. Consequently, it cannot be said that Defendant acted contrary to that of a reasonable officer.

### C. Plaintiff's State Law Claim

Federal district courts have subject matter jurisdiction over cases that raise federal questions and cases that meet the standards for diversity. *See*, 28 U.S.C. §§ 1331-1332. "Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte." *Liberty Mut. Ins. Co. v. Ward Trucking Corp*., 48 F.3d 742, 750 (3d Cir. 1995). Here, Plaintiff has also brought a state law intentional infliction of emotional distress claim against an Unknown Police Officer. After dismissing all the Plaintiff's federal claims, this Court will not address Plaintiff's state law claim. Therefore, this Court will remand Plaintiff's state law claim to the Delaware County Court of Common Pleas.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. An appropriate Order follows.